IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                         18cr3067 KG

ISRAEL BACA,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

This matter comes before the Court on Defendant Israel Baca's Motion to Suppress, filed February 15, 2019. (Doc. 35). Defendant seeks to suppress statements made before and after his arrest and the evidence found in a black Mercedes Benz on April 23, 2018, in Hobbs, New Mexico. The United States responded on March 1, 2019. (Doc. 45). The Court held an evidentiary hearing on this Motion on March 5, 2019, and continued the hearing on March 8, 2019. Having considered the briefs, applicable law, evidence and arguments of counsel, the Court denies Defendant's Motion to Suppress (Doc. 35).

I.    Standard of Review

When a criminal defendant files a Fourth or Fifth Amendment-based motion to suppress, the United States bears the burden of showing, by a preponderance of the evidence, that the criminal defendant's rights were not violated. *United States v. Matlock*, 415 U.S. 164, 177 (1974). However, "[t]he proponent of a motion to suppress has the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search." *United States v. Eckhart*, 569 F.3d 1263, 1274 (10th Cir. 2009) (quoting *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000)); *see also United States v. Eylicio-Montoya*, 18 F.3d 845, 850

(10th Cir. 1994) (stating "Constitutional rights are personal and may not be asserted vicariously")). In ruling on a motion to suppress, courts must view the facts in the light most favorable to the United States. *United States v. Matthews*, 458 Fed. Appx. 717, 722 (10th Cir. 2012) (citing *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002)).

II. Background

On April 23, 2019, at approximately 10:00 a.m. Hobbs Police Department Detective Sergeant Ahmaad White received a tip that Defendant was in a specifically described parking lot, with his wife, in a stolen black vehicle and in possession of two firearms, and that Defendant's wife had a warrant out for her arrest. Detective White followed up and went to the location where he observed Defendant in a black Mercedes Benz in a parking lot at 300 East White St. in Hobbs, New Mexico. Detective White requested assistance and instructed uniformed officers to approach Defendant and determine whether the vehicle was stolen.

Hobbs Police Department Officer Scott Russell and others responded to the call and encountered Defendant standing near the driver side door of a blue Jeep Renegade, parked near the black Mercedes. The driver's door and trunk of the Mercedes were open. Officers turned on their emergency lights and approached Defendant. A woman sat in the passenger's seat of the Jeep. Defendant closed the driver's door of the Jeep and began walking back toward the Mercedes.

Officer Russell ordered Defendant, "Come here," and in response Defendant stopped and walked toward the officers. Defendant said he was cleaning the Mercedes for his friend, Michael Giesick, who owned the vehicle. Defendant also said he had not been driving the Mercedes. Officer Russell asked Defendant if he was armed. Defendant said he did not have a firearm on his person. Officer Russell conducted an exterior pat-down of Defendant and confirmed that

Defendant was not armed. Officers ran a records check on the Mercedes and determined that it had not been reported stolen, though they also found it was not registered to Michael Giesick.

Officers confirmed that the woman in the passenger seat of the Jeep, Defendant's spouse, Ashley Rodriguez, had a warrant out for her arrest. As a result, officers arrested Rodriguez. Upon removing Rodriguez from the Jeep, officers noticed an empty gun holster on the seat where Rodriguez had been sitting. Officers then ran the Jeep through law enforcement databases and learned that the Jeep had been reported stolen. As a result, they searched the Jeep.

Officers handcuffed Defendant and transported him to the substation to question him about the Mercedes and Jeep. Detective Jason Guy advised Defendant of *Miranda* rights at the substation. Defendant signed a written waiver of his rights and agreed to speak with Detective Guy.

Officer Russell remained at the parking lot and reported observing a firearm situated between the driver's seat and center console inside the Mercedes. As a result, he swore to a search warrant affidavit for the search warrant. Officers sealed the Mercedes and towed the vehicle to the Hobbs Police Department lot. A subsequent search of the Mercedes revealed a .45 HiPoint firearm and ammunition.

The Court held a suppression hearing on March 5 and March 8, 2019, at which Detective White, Detective Guy, Hobbs Police Department Sergeant Travis Jackson, and Officer Russell testified. The parties submitted video exhibits, which the Court has reviewed, including Officer Russell's body cam (Exhibit 1), Officer Russell's dash cam (Exhibit 2), Detective Guy's body cam (Exhibit 3), Sergeant Jackson's body cam (Exhibit 11), Hobbs Police Department Officer Brandon Solomon's body cam (Exhibit 12), and Officer FNU Torres' body cam (Exhibit 13).

Additional facts are discussed below in relation to each issue raised.

III.     Discussion

Defendant raises multiple issues relating to his seizure, detention, search of the Mercedes and his statements. The Court addresses each issue in turn.

A. *Seizure of Defendant*

Defendant argues that Officer Russell and others violated his Fourth Amendment right to be free from an unreasonable seizure when officers encountered him at the parking lot. Defendant contends the officers did not have reasonable suspicion to seize or detain Defendant at any point during the encounter.

The United States argues the encounter was consensual at all times until officers handcuffed Defendant. Even if the encounter was not consensual, the United States argues that officers had reasonable suspicion to detain Defendant based on the tip received by Detective White and additional information discovered during the encounter.

A defendant bears the burden of establishing when he was seized for Fourth Amendment purposes. *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017). The United States then bears the burden of proving the reasonableness of the officer's suspicion supporting any such seizure. *Id.*

1. *Whether Defendant was seized within the Meaning of the Fourth Amendment*

"[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). In determining whether an encounter between a police officer and a citizen is consensual, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a

reasonable person that he was not at liberty to ignore the police presence and go about his business." *Id.* At 437 (quotation omitted). "[T]he test allows officers to make inquiries so long as they don't throw their official weight around unduly." *Hernandez*, 847 F.3d at 1263-64 (quoting *United States v. Tavolacci*, 895 F.2d 1423, 1425 (D.C. Cir. 1990)). A non-exhaustive list of factors to consider when determining whether a reasonable person would feel free to terminate his encounter with police include:

> the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

*Id.* at 1264 (quoting *United States v. Lopez*, 443 F.3d 1280, 1284 (10th Cir. 2006). "Although no single factor is dispositive, the strong presence of two or three factors may be sufficient to support the conclusion a seizure occurred." *Lopez*, 443 F.3d at 1284-85 (quotation omitted).

The Court concludes that the encounter between Defendant and officers was not consensual. The encounter occurred during the day in a public parking lot, Defendant was within the view of persons other than law enforcement officers, and the officers did not physically restrain Defendant. However, the officers suddenly and rapidly arrived at the scene, their emergency lights activated. Within minutes of Officers Russell and Solomon, at least one more officer arrived. Officer Russell stepped out of his vehicle and ordered, "Come here a minute."[1] Defendant complied with that order. Officer Russell then explained to Defendant why

---

[1] The Court admitted Officer Russell's lapel cam or body cam into evidence, without objection, as Exhibit 1. The video, approximately sixty-one (61) minutes long, speaks for itself. Unless otherwise noted, specific times involving the on-scene encounter are based on this video.

5

officers were there and that they wanted to run the vehicle identification number (VIN) on the Mercedes. Officer Russell patted down the Defendant for weapons and found none.

Officer Solomon, who was driving a police SUV, parked his vehicle facing the Mercedes, thereby impeding the egress from the area. Officer Russell parked his police cruiser closer to the Jeep Renegade. The manner and location in which officers parked their vehicles and blocked the exit routes for the Jeep and the Mercedes further indicate that a reasonable person would not consider themselves at liberty to ignore the police presence and go about their business. The evidence shows Defendant was seized within the meaning of the Fourth Amendment.

2. *Whether Reasonable Suspicion Supported the Seizure of Defendant*

"A . . . stop must be justified at its inception and, in general, the officer's actions during the stop must be reasonably related in scope to the circumstances that initially justified it." *United States v. Lopez*, 849 F.3d 921, 925 (10th Cir. 2017). "Authority for the seizure . . . ends when tasks tied to the . . . infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). A stop may be extended beyond the initial scope "if the person stopped consents to the extension or if the police have a reasonable suspicion that other illegal activity has occurred or is occurring." *Lopez*, 849 F.3d at 925.

a. *Reasonable Suspicion Supported the Initial Seizure*

Defendant argues that officers lacked reasonable suspicion to seize him in the first instance and, therefore, violated his Fourth Amendment rights. Defendant analogizes this situation to *Florida v. J.L.*, in which the Supreme Court held that "an anonymous tip that a person is carrying a gun," "without more," does not establish reasonable suspicion. 529 U.S. 266, 268 (2000).

The evidence here, however, indicates Detective White had reasonable suspicion of criminal activity. Specifically, Detective White received a tip from a known and trusted source. Furthermore, Detective White corroborated the information before requesting that uniformed officers respond to the scene. The tipster named the Defendant and described his location sufficiently for Detective White to determine Defendant's location. Indeed, Detective White found Defendant at that location less than an hour later. The tipster also said that Defendant would be in a black vehicle, and Detective White observed Defendant in a black Mercedes Benz. Detective White received additional information that the vehicle was stolen, that Ms. Rodriguez may be present, and that she had a warrant out for her arrest. As a result, the officers had reasonable suspicion of present criminal activity sufficient to justify seizing and detaining Defendant pending further investigation.

b. *Reasonable Suspicion Supported the Seizure at all Times*

Defendant further argues that the scope and duration of the seizure was unlawful. Specifically, he argues any suspicion was dispelled once the VIN check on the Mercedes revealed that the car had not been reported stolen and a weapons pat-down search showed the Defendant was unarmed. The Court concludes that based on the totality of circumstances, the scope and duration of the detention was objectively reasonable. *United States v. Bullcoming*, 2019 WL 1110832, at *2, --- F.3d --- (10th Cir. Mar. 11, 2019) ("In determining whether reasonable suspicion exists, we look at the totality of the circumstances." (citation omitted)); s*ee also United States v. De La Cruz*, 703 F.3d 1193, 1203 (10th Cir. 2013) ("In looking to the duration, we refused to adopt a bright-line rule; instead, we looked to the totality of the circumstances to determine whether the stop was 'appreciably' prolonged." (internal citation omitted)); *Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015) (stating, "tolerable duration

of police inquiries in the [investigative]-stop context is determined by the seizure's 'mission'—to address the [reasonable suspicion] that warranted the stop, and attend to related safety concerns" (internal citation omitted); *United States v. Sharpe*, 470 U.S. 675, 686 (1985) (holding "it [is] appropriate to examine whether the police diligently pursued [the] investigation" when determining the reasonable duration of stop). Moreover, even though the officers found no weapons on Defendant and that the Mercedes was not *reported* stolen, other circumstances aroused their suspicion and warranted further investigation. *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998) ("Police officers need not close their eyes to suspicious circumstances."); *United States v. Espinosa*, 782 F.2d 888, 891 (10th Cir. 1986) ("The Fourth Amendment does not require police officers to close their eyes to suspicious circumstances.").

The initial scope of the stop was to determine whether Defendant had weapons and whether the black vehicle was stolen. When officers initially approached Defendant and asked if the Mercedes was stolen, Defendant informed them that the vehicle was not stolen, and that he had not been driving the vehicle but was only cleaning it out. Exhibit 1 (car cleaning supplies visible on sidewalk immediately behind car). Officer Solomon checked the VIN of the Mercedes. Officer Russell and Defendant waited for results of the records check, standing near the front end of Officer Solomon's police SUV. Defendant asked Officer Russell what he should tell the owner of the Mercedes. Officer Russell asked Defendant who owned the car, and Defendant told Officer Russell that his friend, Michael Giesick, owned the vehicle. The records check returned that the VIN matched the license plate for the Mercedes and that it had not, at that time, been reported stolen.

Defendant argues that the reasonable suspicion ended at this point. The Court disagrees for multiple reasons. First, in addition to providing information on a stolen vehicle, the tipster

stated that Ms. Rodriguez was with Defendant and had a warrant out for her arrest. During the initial encounter officers observed a woman sitting in the passenger seat of the Jeep. Officer Russell asked dispatch or records for information on Ms. Rodriguez and confirmed that she had a warrant out for her arrest based on absconding from probation, corroborating the tipster's information about Ms. Rodriguez.

Second, upon confirming that Ms. Rodriguez had a warrant out for her arrest, Officer Russell asked Ms. Rodriguez to step out of the vehicle and arrested her on the probation violation warrant. When Ms. Rodriguez stepped out of the Jeep Renegade, Officer Russell observed an empty gun holster on the seat where she was sitting.

Third, Officer Russell testified that as he arrived on scene he observed Defendant appear to stash or throw something into the driver's seat area of the Jeep. Officer Russell arrested Ms. Rodriguez and then checked the Jeep's ownership. A records check showed the Jeep was reported stolen in Texas.

The officers also determined the Mercedes was registered to "Esteban Gutierrez-Maynes," and not to Michael Giesick. Officer Russell asked dispatch to contact the registered owner. Officers also determined Mr. Giesick had an outstanding warrant out for his arrest and learned from Defendant that Mr. Giesick would not be coming to the scene to claim the Mercedes.

The Mercedes and Jeep were impounded and Defendant was handcuffed and transported to the police substation. The Court concludes that under these circumstances, the detention was based on reasonable suspicion and the scope and duration were reasonable.

B. *Search of the Mercedes*

After officers handcuffed Defendant and took him to the police substation, the on-scene investigation continued. The evidence, including Exhibit 1 and testimony shows that Officer Russell walked around the perimeter of the Mercedes, stepped into the area between the driver-side open door and the door frame, bent down and peered into the driver's cab area of the Mercedes. He observed the handle of a firearm situated between the driver's seat and the center console. Officer Russell alerted other officers on scene to the presence of the firearm in "plain view." Sergeant Jackson also then crouched down at the end of the open driver's door and stated he could see the handle of the firearm. Officer Russell then walked around the open driver's door to the hood area and stated he could see the handle of the firearm from that vantage point also.

As a result of their observations, officers sealed the Mercedes and had the vehicle towed to the Hobbs Police Department. Officer Russell swore to a search warrant affidavit stating, in relevant part, that he observed a firearm in plain view. Officer Russell obtained a search warrant and subsequently searched the Mercedes with Detective Guy. While executing the search warrant on the Mercedes, Officer Russell and Detective Guy found a .45 caliber HiPoint firearm between the driver's seat and center console.

Defendant argues the evidence shows Officer Russell entered the vehicle when he breached the plane of the vehicle, thereby conducting a search of the Mercedes' interior without a warrant and without probable cause in violation of the Fourth Amendment. Defendant further contends that the firearm was not in plain view and would not have been inevitably discovered. Based on these claimed Fourth Amendment violations, Defendant asserts the firearm ultimately found in the Mercedes must be suppressed.

### 1. *Whether Defendant has Standing as to the Mercedes*

As a threshold matter, the United States argues that Defendant lacks standing to challenge the search of the Mercedes. The Court agrees. "It is axiomatic that the threshold issue of Fourth Amendment standing, whether the search in question violated the rights of the defendant seeking to exclude the evidence, must first be addressed in deciding a motion to suppress." *United States v. Angulo-Fernandez*, 53 F.3d 1177, 1179 (10th Cir. 1995) (quoting *Rakas v. Illinois*, 439 U.S. 128, 140 (1978)). That is, "Constitutional rights are personal and may not be asserted vicariously." *Eylicia-Montoya*, 18 F.3d 845, 850 (10th Cir. 1994).

The Supreme Court explained in *Smith v. Maryland* that the Fourth Amendment standing analysis turns on two related questions: whether a defendant has manifested a subjective expectation of privacy in the area searched; and whether society is willing to recognize that expectation as objectively reasonable. 442 U.S. 735, 740 (1979). "To establish standing to challenge a car search, the defendant bears the burden of showing that he had a 'legitimate possessory interest in or [a] lawful control over the car.'" *United States v. Valdez Hocker*, 333 F.3d 1206, 1209 (10th Cir. 2003) (alteration in original) (quoting *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000)). While "a defendant need not submit legal documentation showing a chain of lawful custody from the registered owner" of a vehicle to himself, he still "bears the burden of establishing that he gained possession from the owner or someone with authority to grant possession." *United States v. Eckhart*, 569 F.3d 1263, 1274 (10th Cir. 2009).

When determining a defendant's claim of standing to challenge a car search, courts consider "(1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and

(3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle." *Id.* at 1274-75.

At the suppression hearing, defense counsel directed the Court to *Byrd v. United States* as support for the proposition that Defendant's possession of the Mercedes gave rise to a sufficient legitimate expectation of privacy for Fourth Amendment purposes. 138 S. Ct. 1518 (2018). In that case, a defendant was the sole occupant of a rental vehicle when officers pulled him over. The defendant had received possession—voluntarily—from the renter, but was not a listed driver on the rental agreement. The rental agreement expressly stated that allowing an unlisted driver to drive the vehicle "is a violation of the rental agreement[ . . . and] may result in any and all coverage otherwise provided the rental agreement being void and [the renter] being fully responsible for all loss or damage, including liability to third parties." *Id.* at 1524-25. Nothing about allowing an unlisted driver to drive the rental vehicle suggested that the unlisted driver unlawfully possessed the rental vehicle. In rejecting the United States' argument that "only authorized drivers of rental cars have expectations of privacy in those vehicles," the Court "[saw] no reason why the expectation of privacy that comes from *lawful* possession and control and the attendant right to exclude would differ depending on whether the car in question is rented or privately owned by someone other than the person in current possession of it. . . ." *Id.* at 1528 (emphasis added).

By contrast, Defendant here links his possession of the Mercedes to Mr. Geisick, but who is not the registered owner. There is no evidence linking Mr. Geisick to the lawful owner of the vehicle. Therefore, *Byrd* does not aid Defendant's position. Moreover, even though Defendant may have had possession of the Mercedes, he has not met his burden of establishing that he had a

legitimate or lawful possession. Therefore, Defendant lacks standing under the Fourth Amendment to challenge the search of the Mercedes.

    2. *Whether the Firearm was in Plain View*

Assuming arguendo Defendant had standing to challenge the search of the Mercedes, which he does not, Defendant argues that the firearm identified by Officer Russell and Sergeant Jackson was not in plain view.

A defendant generally has "no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Texas v. Brown*, 460 U.S. 730, 740 (1983). It is well-settled that "if police are lawfully in a position from which they view an object, [and] if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

The Court finds *United States v. Levy*, 217 F. Supp. 3d 643 (E.D.N.Y. 2016), helpful here. In *Levy*, an officer discovered a firearm in a vehicle by leaning into the car through the open passenger door, with his head and hand inside the vehicle and his feet outside the vehicle. While that intrusion constituted a search, the firearm was also visible to anyone standing outside the car in the open door of the front passenger side of the car. Another officer testified that he was able to see the gun by standing outside the car near the open passenger door. The court in *Levy* concluded that "[w]hat matters is that the evidence *could* be plainly viewed from a lawful position, which was the wide open car door." 217 F. Supp. 3d at 668.

Defendant relies on Exhibit 2 video to contend Officer Russell crossed the plane into the Mercedes. The Court reviewed the entire Exhibit 2 video and is not persuaded. Rather, the

Court relies on the Exhibit 1 video and Officer Russell's testimony to find Officer Russell did not enter the passenger compartment of the Mercedes nor did he touch anything in the vehicle.

The Court also notes the driver's door was open when officers arrived on scene. The Eighth Circuit recently agreed with a district court's finding that "officers had no responsibility to close [a car] door; [and] they simple took the situation as they found it." *United States v. Pulida-Ayala*, 892 F.3d 315, 319-20 (8th Cir. 2018). The officers had no obligation to close the door and Officer Russell was in a lawful position between the open door and the frame of the Mercedes. The Court also notes Sergeant Jackson stated he was able to plainly view the firearm by crouching at the end of the open driver's door. The Court finds the firearm was in plain view for Sergeant Jackson. The Court also notes from Exhibit 1 and Officer Russell's testimony he could see the firearm from a different vantage point outside the vehicle. The Court concludes both Officer Russell and Sergeant Jackson observed the firearm in plain view.

### 3. *Whether the Firearm Would Have Inevitably Been Discovered*

The Court also concludes the firearm would have been inevitably discovered pursuant to an inventory search of the Mercedes. *United States v. Christy*, 739 F.3d 534, 540 (10th Cir. 2014) (citing *Nix v. Williams*, 467 U.S. 421, 444 (1984)). The United States bears the burden of proving the evidence would have inevitably been discovered without a Fourth Amendment violation. *Id.* at 540.

The Hobbs Police Department has a policy regarding searching and inventorying all towed vehicles. Exhibit 10 (tow policy). Defendant has neither argued that the Hobbs Police Department's towing policies and procedures are inappropriate or constitutionally defective, nor has Defendant otherwise challenged those policies and procedures.

Even so, the Court notes the policy provides that towing may be "necessary as a matter of public safety, to protect property, or to preserve evidence." *Id.* Furthermore, when an arrested person was a vehicle operator and is not the registered owner of the vehicle, the Tow Policy provides the vehicle is to be towed unless the registered owner is immediately available to take possession. Moreover, a vehicle may be towed to preserve evidence. *Id.* The Court concludes the Mercedes was lawfully towed to the Hobbs Police Department and, based on the same policy, would have been lawfully inventoried. As a result, the Court concludes the firearm evidence discovered in the Mercedes would have been inevitably discovered

      C. *Whether Defendant is Entitled to a* Franks *Hearing*

Defendant requests a *Franks* hearing to challenge the veracity of the search warrant affidavit. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). A *Franks* hearing is warranted "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Id.*

Officer Russell drafted and swore to a search warrant affidavit, requesting a search warrant for the Mercedes, stating, in relevant part, "[w]hile officers were investigating further on the scene I observed a black in color handgun placed between the driver's seat of the vehicle and the center console." (Doc. 45-1) at 7.

Defendant adduced no evidence at the suppression hearing that a false statement, if one existed at all, was knowingly, recklessly, or intentionally included in the search warrant affidavit. Defendant failed to meet his burden of making a substantial preliminary showing to justify a *Franks* hearing. The Court denies Defendant's request for a *Franks* hearing.

15

D. *Defendant's Statements*

Defendant argues that his statements at the parking lot scene and at the Hobbs Police Department were made in violation of the Fifth Amendment. Under the Fifth Amendment, a *Miranda* warning is required when a defendant is "interrogated" while in custody. *United States v. Revels*, 510 F.3d 1269, 1273 (10th Cir. 2007). "Whether a suspect is in custody represents an objective determination." *United States v. Jones*, 523 F.3d 1235, 1239 (10th Cir. 2008). The Supreme Court held in *Berkemer v. McCarty* that custodial interrogations are those in which the defendant's "freedom of action is curtailed to the degree associated with a formal arrest." 468 U.S. 420, 441 (1984).

Courts distinguish between custodial interrogations and officers asking investigatory questions. When making this determination, courts look to "(1) whether the circumstances demonstrated a police-dominated atmosphere; (2) whether the nature and length of the officers' questioning was accusatory or coercive; and (3) whether the police made [the defendant] aware that [he] was free to refrain from answering questions, or to otherwise end the interview." *Revels*, 510 F.3d at 1275.

1. *Whether Defendant's Statements on Scene Should be Suppressed*

Officers spoke with Defendant and asked questions of Defendant before handcuffing and detaining him. Defendant argues that his statements to police prior to being placed in handcuffs and removed from the scene must be suppressed for violations of his Fifth Amendment rights. The Court disagrees and concludes these statements were not made as part of a custodial interrogation.

The Court finds that officers asked Defendant investigatory questions, inquiring about the ownership of the Mercedes and what he was doing. The Court concludes that the officers'

conversations with Defendant on the scene at 300 East White were investigatory in nature and did not objectively constitute custodial interrogation. Therefore, officers were not required to provide Defendant with *Miranda* warnings and his statements on scene are not subject to exclusion on Fifth Amendment grounds.

2.  *Whether Defendant Validly Waived* Miranda *Rights*

Defendant also made statements to officers, including Detective Guy, after he was handcuffed and taken to the Hobbs Police Department. The Court concludes Defendant was "in custody" within the meaning of the Fifth Amendment and *Miranda*. Defendant does not contend that he was not *Mirandized* or that he did not waive his Fifth Amendment privilege. Rather, he challenges voluntariness of his statements and, thus, the validity of the waiver.

A defendant may waive the privilege against self-incrimination so long as the waiver is voluntary, knowing, and intelligent. *United States v. Burson*, 531 F.3d 1254, 1256 (10th Cir. 2008). The United States bears the burden to prove by a preponderance of the evidence that a defendant's waiver is valid. *United States v. Morris*, 287 F.3d 985, 988 (10th Cir. 2002).

When evaluating a waiver's validity, courts conduct a two-step analysis:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Morris*, 298 F.3d at 988 (quoting *Colorado v. Spring*, 479 U.S. 564, 573 (1987)).

This inquiry requires courts to evaluate the totality of the circumstances and independently determine the ultimate issue of voluntariness. Courts are guided by several factors, including: "(1) the defendant's age, intelligence, and education; (2) the length of the

17

detention and interrogation; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to or threatened with any physical punishment." *United States v. Lugo*, 170 F.3d 996, 1004 (10th Cir. 1999); *Clanton v. Cooper*, 129 F.3d 1147, 1158 (10th Cir. 1997). No single factor is determinative. *Lugo*, 170 F.3d at 1004.

Here, Detective Guy's testimony and video evidence show Defendant was advised of his constitutional rights. Before questioning, Defendant was allowed to use the restroom. Detective Guy advised Defendant of his rights under *Miranda*. *See* Exh. 3 at 5:10-6:28. Defendant initialed a form stating that he had been advised of each right and then agreed to speak with Detective Guy. Exhibit 4. The Court concludes that Defendant knowingly, intelligently, and voluntarily waived his rights.

E. *Credibility Determination*

"Credibility determinations are peculiarly the province of the finder of fact. . . ." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (quotation and citation omitted); *see also Baertschy v. Raemisch*, 2019 WL 993097, at *5, --- Fed. Appx. --- (10th Cir. Feb. 28, 2019). Factors beyond a witness's demeanor and tone of voice may weigh in a judge's decision to find that witness's testimony credible, including "[d]ocuments or objective evidence [that] may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985).

Detective White, Detective Guy, Sergeant Jackson, and Officer Russell testified at the suppression hearing. Having listened to their testimony and reviewed corroborating evidence, including video evidence, the Court finds the testimony of all four officers credible.

18

IV.     Conclusion

Having considered the briefs, evidence and arguments of counsel, and for the foregoing reasons, the Court denies Defendant's Motion to Suppress as well as his request for a *Franks* hearing.

IT IS, THEREFORE, ORDERED that Defendant's Motion to Suppress (Doc. 35) is denied.

_____
UNITED STATES DISTRICT JUDGE